M. E. Cunningham Company v. Commissioner.
Cunn v. Commissioner
Docket Nos. 11783 and 27720.
United States Tax Court
1951 Tax Ct. Memo LEXIS 286; 10 T.C.M. (CCH) 276; T.C.M. (RIA) 51081; March 22, 1951
*286 George Walter Smith, Esq., 419 Wood St., Pittsburgh, Pa., for the petitioner. A. W. Dickinson, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies as follows: Excess Profits
Year
Tax
Income Tax
1942
$10,971.85
1943
6,257.33
1944
2,666.53
$1,706.25
1945
11,331.67 The only issue raised by the pleadings relating to the years 1942 and 1943 is raised by the Commissioner in an amendment to the answer in which he claims that the petitioner erroneously included in and the Commissioner failed to exclude from cost of goods sold $13,588.34 for 1942 and $15,669.32 for 1943 designated "Royalties". He made claim for any resulting increased deficiency. The issues relating to 1944 and 1945, all raised by the petitioner, are that the Commissioner erroneously disallowed deductions of $11,619.17 for 1944 and $9,939.02 for 1945, representing expenses designated royalty payments and disallowed a deduction of $823.56 for 1945 representing amortization of a patent. Findings of Fact The petitioner filed its corporate returns for the taxable years with the collector of internal revenue *287 for the twenty-third district of Pennsylvania. Frank S. Speicher, Sr. was working prior to 1944 for a firm making stamps and dies, including rubber stamps, badges, and hand lettered steel stamps. The petitioner at that time was engaged in a similar line of business. Speicher was working on blue prints for a machine which he had designed to make steel stamping dies. He and two friends, E. F. Waller and William Hague, who were not engaged in this type of business, desired to form and own a company to make steel dies in which Speicher would be active. They decided to buy a controlling interest in the stock of the petitioner to carry out that purpose. They entered into an agreement on May 20, 1924 whereby Speicher agreed to transfer to the petitioner the machine on which he was working and any future improvements or patents that he might develop while he was a part owner or employee of the petitioner, and the other two agreed that he should receive 5 per cent of sales of steel stamps for each year in which there was a profit and that profit permitted the payment of the 5 per cent "royalty". They decided it would be desirable to retain as stockholders C. R. Ross and another who were *288 active in the affairs of the petitioner. Hague acquired 10.9 per cent, Waller or members of his family 13.6 per cent, and Speicher or members of his family 27.2 per cent of the stock of the petitioner in 1924. Speicher thereafter worked for the petitioner and from time to time, including spare time, worked on the machine. An old machine was rebuilt in 1938, Speicher developed a new idea in 1939, the first experimental machine was developed in 1940 or 1941, and shortly thereafter five machines were built. No patent was ever obtained in connection with the machines. The agreement of May 20, 1924 was destroyed in a fire in 1936 and on May 21, 1938 the Board of Directors of the petitioner noted in its minutes the loss of the agreement and agreed that it should remain in force as originally made. The agreement was described in the minutes as follows: "* * * a Five (5%) Per Cent Royalty payment to F. S. Speicher, of all sales of Steel Stamps each year (profits permitting) but not to accrue if any year has shown no profit. In return, F. S. Speicher agrees to assign ownership of the special machine for the manufacture of Steel Stamps and Dies and also agrees to assign any further improvements *289 to said machine or patents that he may develop while he was part owner or employee of the M. E. Cunningham Company without necessarily being paid any further royalty payments." The stock of the petitioner in 1938 was owned 28.2 per cent by Speicher or members of his family, 2.3 per cent by Waller or members of his family, and 69.5 per cent by other undisclosed stockholders. The directors at that time were Speicher, C. R. Ross, Hall, and Slater. No payments under the agreement had ever been made to Speicher up to that time. The company had small profits in 1935, 1936 and 1937, but had sustained losses in other years substantially in excess of those profits. It had a deficit until 1940. The first payment under the agreement was made to Speicher in 1941 and thereafter payments were made until a loss was sustained in 1946 for which year no payment was made. The payments made during the taxable years were as follows: 1942
$13,588.34
1943
15,669.32
1944
11,619.15
1945
9,939.02
The petitioner entered into an agreement with L. M. Brown, Inc., effective November 1, 1933, whereby for the payment by the petitioner of $14,000 to L. M. Brown, Inc., the latter granted *290 the petitioner a license to the exclusive right to manufacture steel stamps for the life of a patent on a type of steel. The petitioner was to have the right to sell steel to others for the purpose of manufacturing steel stamps. All steel was to be purchased through L. M. Brown, Inc., at a price fixed in the agreement. The patent at that time had a remaining life of 10 years and 11 months. The steel covered by the patent tended to retain its shape when forceably struck better than other steel available for making steel marking dies. The petitioner learned for the first time in 1950 that competitors were using similar steel. The Commissioner, in determining the deficiencies for 1942 and 1943, made no changes material hereto in the income shown on the returns. The Commissioner, in determining the deficiencies for 1944 and 1945, disallowed royalty payments of $11,619.17 for 1944 and $9,939.02 for 1945 with the explanation that those amounts claimed in the return as "royalty payment" were not deductible under section 23 (a) (1) (A). The Commissioner, in determining the deficiency for 1944, increased the deduction for amortization by $138.30 and explained that the petitioner was entitled *291 to an amortization deduction in the amount of $961.83 for the year 1944 in lieu of the amount of $823.53 claimed on the return, while in determining the deficiency for 1945 he disallowed an amortization deduction of $823.56 and explained that the petitioner was not entitled to any amortization deduction for that year. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: There was a contract under which the petitioner was required to pay Speicher a percentage of sales, and the evidence shows that the payments made during all of the taxable years were made in accordance with the terms of that agreement. That is so despite the fact that the terms of the agreement were not too clear. If the payments are to be regarded as a part of the cost of the machine, then it seems reasonable to allow a corresponding deduction for each year because the payments are measured by the profitable use of the machine in each year and will continue to be so measured during any year in which payments are made. Associated Patentees, Inc., 4 T.C. 979. The amounts paid to Speicher under the agreement during the taxable years are deductible from income either *292 as ordinary and necessary expenses incurred in those years or as deductions under section 23 (1). The petitioner claims the right to deduct in 1945 a part of the cost of the agreement with L. M. Brown, Inc. The Commissioner contends that no amortization deduction is allowed for 1945 because the agreement gave the petitioner the license only for the life of the patent and the life of the patent terminated in 1944. The petitioner has failed to show that it is entitled to any deduction for amortization of the agreement with Brown in 1945 during which year that agreement was no longer in effect. The mere fact that the petitioner did not realize until 1950 that others were using steel similar to that which it was using is insufficient reason for allowing an amortization deduction for 1945 on the cost of a contract which by its terms expired prior to 1945. Decision will be entered under Rule 50.